_____ FILED        _____ ENTERED
_____ LOGGED       _____ RECEIVED

MAR 27 2012

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

GRB USAO 2010R00644

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. _WOQ-12-0163_ |
| | ) | |
| v. | ) | (Making and Subscribing |
| | ) | to a False Tax Return, 26 |
| | ) | U.S.C. § 7206(1)) |
| RICARDO O. CURRY II, | ) | |
| | ) | |
| Defendant. | ) | |

## INDICTMENT

The Grand Jury for the District of Maryland charges that:

## COUNT ONE

### (Making and Subscribing a False Tax Return)

### INTRODUCTORY ALLEGATIONS PERTINENT TO ALL COUNTS

At all times relevant to this Indictment:

1.      Defendant **RICARDO O. CURRY II ("CURRY")**, a resident of Maryland,

worked for, or on behalf of, Peerless Real Estate Services, Inc., ("Peerless").

2.      Peerless was a North Carolina corporation with its principle place of business at

135 Crown Ridge, Spruce Pine, North Carolina.  Peerless has overseen the sale of real property

in North Carolina including the Village of Penland development.  Other entities involved with

the Village of Penland operation include: Village of Penland, LLC; MFSL Landholdings, LLC;

Communities of Penland, LLC; COP Land Holdings, LLC; P.G. Capital Holdings, LLC; West

Side Development, LLC, hereinafter these companies and their officers are collectively referred

to as "Peerless".

3.      Around 2002, Peerless purchased a track of land in Mitchell County, North Carolina, containing 1200 to 1400 acres. Peerless took this land and subdivided it into a development called the Village of Penland, which contained more than 2000 lots.

4.      While marketing the Village of Penland to consumers over a period of three or more years, Peerless promised consumers they would profit from the venture without ever investing any of their own money. Through such a promise, Peerless enticed the consumers to use the consumers' own credit to purchase lots. Consumers were told that they could only purchase the property by credit transactions and could not pay cash for the lots. Peerless recevied $95 million from the sale of lots from 2002 through 2007.

5.      Peerless paid certain entities and individuals, including **CURRY**, commissions to market to new investors into Penland.

6.      **CURRY** induced at least 12 investors to purchase 23 or more lots as investors in Penland during the period of November 2006 - May 2007, resulting in gross sales of at least $4.25 million.

7.      **CURRY** received a commission equal to 5 to 10% of Peerless's proceeds for each of the lot purchases made by the investors Curry recruited, totaling $415, 201.46. These transfers were characterized as "commissions" or "referral fees." **CURRY** was not licensed as a North Carolina real estate broker or mortgage broker.

8.      During 2005 and 2006, **CURRY** received $41,455.36 and $43,200.00 respectively, from Peerless in referral fees. During 2007, **CURRY** received $330,546.10 in referral fees. This income was not reported on his tax returns to the Internal Revenue Service.

2

9.    The Internal Revenue Service (hereinafter "IRS") was an agency of the United States Department of Treasury responsible for enforcing the tax laws of the United States and collecting the taxes owed to the Treasury of the United States.

## THE CHARGE

### (Making and Subscribing a False Tax Return)

The Grand Jury for the District of Maryland charges that:

On or about April 12, 2006 in the District of Maryland, the defendant,

### RICARDO O. CURRY II,

did willfully make and subscribe a U.S. Individual Income Tax Return, IRS Form 1040, for the

year 2005 in the name of **RICHARDO CURRY II**, which was verified by a written declaration

that it was made under the penalties of perjury and which **CURRY** did not believe to be true and

correct as to every material matter.  Line 22 of that 2005 U.S. Individual Income Tax Return, IRS

Form 1040, which was prepared and signed in the District of Maryland and filed with the IRS,

represented that **CURRY**'s total income for 2005 was $84,180 whereas, as **CURRY** then and

there knew, his total income in 2005 was substantially in excess of that amount.


26 U.S.C. § 7206(1)


4

## COUNT TWO

### (Making and Subscribing a False Tax Return)

And the Grand Jury for the District of Maryland further charges that:

1.      The allegations of paragraphs 1 through 9 of Count One are hereby realleged and incorporated by reference.

2.      On or about May 10, 2007, in the District of Maryland, the defendant,

### RICARDO O. CURRY II,

did willfully make and subscribe a U.S. Individual Income Tax Return, IRS Form 1040, for the year 2006 in the name of **RICARDO CURRY II**, which was verified by a written declaration that it was made under the penalties of perjury and which **CURRY** did not believe to be true and correct as to every material matter. Line 22 of that 2006 U.S. Individual Income Tax Return, IRS Form 1040, which was prepared and signed in the District of Maryland and filed with the IRS, represented that **CURRY**'s total income for 2006 was $59,412 whereas, as **CURRY** then and there knew, his total income in 2006 was substantially in excess of that amount.

26 U.S.C. § 7206(1)

5

### COUNT THREE

#### (Making and Subscribing a False Tax Return)

And the Grand Jury for the District of Maryland further charges that:

1.      The allegations of paragraphs 1 through 9 of Count One are hereby realleged and incorporated by reference.

2.      On or about May 1, 2008, in the District of Maryland, the defendant,

### RICARDO O. CURRY II,

did willfully make and subscribe a U.S. Individual Income Tax Return, IRS Form 1040, for the year 2007 in the name of **RICARDO CURRY II**, which was verified by a written declaration that it was made under the penalties of perjury and which **CURRY** did not believe to be true and correct as to every material matter.  Line 22 of that 2007 U.S. Individual Income Tax Return, IRS Form 1040, which was prepared and signed in the District of Maryland and filed with the IRS, represented that **CURRY**'s total income for 2007 was $28,734 whereas, as **CURRY** then and there knew, his total income in 2007 was substantially in excess of that amount.

26 U.S.C. § 7206(1)

Rod J. Rosenstein
United States Attorney

**SIGNATURE REDACTED**

Foreperson

3/27/12

Date